Lake, Ch. J.
I. The sole object of a summons is to bring the defendant before the court; and. although irregularly, or even illegally issued, if there be an appearance for any other purpose than to challenge the jurisdiction of the court the defect will be waived. Cropsey v. Wiggenhorn, 3 Neb., 108. Crowell v. Galloway, same, 215. The defendant having answered to the merits thereby waived the objections which he had previously made to the summons, and it is not necessary to determine whether they were valid or not.
II. It was objected to the information that it was not filed by the district attorney of that district, and a motion to dismiss it on that ground was interposed. In overruling this motion it is insisted that the court erred. But this objection cannot be sustained. The record shows that the information was filed by consent of the district attorney and in his .name, and he subsequently appeared in person and assisted, in the conduct of the case. The course pursued was unobjectionable, and we see no cause for complaint on that ground.
III. The third objection is that the court had no jurisdiction of the case; or rather that inasmuch as the statutes provide a mode for contesting an election to, this office, it, in effect, deprives the court of all jurisdiction by quo wa/rranto, and can alone be' resorted to. And it has been so held by the supreme court of Ohio. The State, ex rel., v. Marlow, 15 O. S., 114. The constitution of Ohio provides that “ the general assembly shall determine by law, before what authority, and in what *515 manner, the trial of contested elections shall be conducted.” "Whether or not the same conclusion would have been reached in the absence of such a constitutional provision we are unable to say, but we are inclined to think that it woirld not.
In speaking of the fact that the constitution gave to the court general jurisdiction in quo warrcmbo, which it had been contended could not be abridged by the legislature, they say on page 133: “The constitution expressly confers original jurisdiction in quo warranto upon the supreme and district courts of the state, and looking to these provisions alone, it might well be claimed that such plenary jurisdiction was intended, as could be exercised in that behalf at common law. * * * But it is clear that the power thus conferred may be modified or limited by other provisions of the same instrument, equally express.” Reference is then made to the twenty-first section of the second article of the constitution of that state, which provides in respect to contested elections as before stated, and the conclusion is reached, that the legislation thereby enjoined “has in effect the same high sanction,” as though it formed a part of the constitution itself. And that “jurisdiction being thus specially conferred upon other tribunals, and the mode of its exercise prescribed, it cannot be inferred that it was intended by the constitution to be differently exercised by a proceeding in quo wa/rranto, as at common law, or by the supreme court, and district courts, under a more general grant of jurisdiction in quo wa/rrantoP But inasmuch as our constitution contains no similar direction to the legislature, this case, upon which much reliance seemed to be placed, cannot be said to be directly in point. Indeed, even if our constitution were the same as that of Ohio in this respect, still we should hesitate long before adopting the conclusion that a contest under the statute was the exclusive mode of determining, in all cases, *516 between conflicting claimants for an office. We should as at present advised be strongly inclined to hold that the remedy by quo warranto still remained as a concurrent remedy, to be resorted to at the option of the state, or of one claiming an office, against an incumbent wrongfully holding the same. But even if the propriety of the rule as laid down in Ohio under the peculiar provision of the constitution of that state be conceded, still it is very clearly wholly inapplicable here. A due regard for a remedy not only clearly recognized by our constitution, but expressly given by the legislature, forbids that we should lay down any such narrow rule in this state.
Section 3, Art. IV, of the constitution of 1867, declares that “the supreme court shall have api^ellate jurisdiction only, except in cases relating to revenue, mandamus, quo warra/nto, habeas corpus, and such cases of impeachment as may be required to be tried before it; and both the supreme and district courts shall have both chancery and common law jurisdiction.” And quo warranto being a common law remedy, it follows that the courts named in this section have this valuable remedy, as exercised under the common law, secured to them irrevocably, except by a change of the fundamental law. The legislature may doubtless provide other remedies in cases to which this one would be quite appropriate, and also invest other tribunals with jurisdiction to administer them, but they would be'auxiliary merely, and could not take from the supreme and district courts their jurisdiction by quo warranto.
In addition to this constitutional authority given to these courts, and of which the legislature is powerless to deprive them, we have chapter 42 of the Revised Statutes, which would authorize this proceeding, even if the constitution were silent on the subject. Section one pro-provides: “When any citizen of this state shall claim any office which is usurped, invaded, or unlawfully held and *517 exercised by another, the person so claiming snch office shall have the right to file in the district court an information in the nature of a quo warranto,” etc. Gen. Stat., 1873. This shows the entire harmony existing between the constitution and our legislation on this subject, and leaves us in no doubt whatever as to the full and complete jurisdiction of the district court in this case.
TY. The most important question remaining to be disposed of, is that raised by the alleged error in excluding certain testimony from the jury. This election was held under the provisions of the general election law of 1873. There is no dispute as to the entire regularity with which it was conducted, up to the canvass of the returns required to be made by the county cleric and two disinterested electors. In this canvass however there seems to have been a grave and inexcusable error committed. The sealed packages of ballots, returned from the several precincts, were broken open, notwithstanding the statute requires them to be kept by the clerk unopened and uninspected, except for certain specified purposes, and were recounted in utter disregard of the law. Instead of making the abstract as shown by the several poll books, as the statute imperatively requires, and from which alone they have any authority to make one at all, these were entirely disregarded, and a pretended re-count of the ballots made, upon the basis of which the respondent was declared elected, and a certificate to that effect issued to him. It is an undisputed fact that the returns from the judges of -election conformed in every particular to the requirements of the law. There was no reason then, nor has any since been shown, for questioning their entire correctness. And it is admitted that these returns gave the relator a clear majority, over the respondent, of five votes. This being so, it was the plain duty of the board of canvassers so to have declared, and of the clerk *518 to have certified accordingly. There is no doubt that cases may arise wherein it would be the dutj^ of a contest board, or a court, to go behind the poll boohs, and resort to a recount of the ballots. Such course is plainly contemplated in the provision requiring the ballots to be kept securely sealed and uninspected until brought before the tribunal where they are to be used; but it should be resorted to only when the poll boohs are directly attached for fraud or mistake, and their verity put in issue. It is only in such a case that a party has the right to go behind the returns, which the statute declares shall be the evidence upon which the certificate of election shall be issued.
There was no issue presented by the pleadings in this case, justifying the admission of the testimony which the court excluded; and as the case stood under the proofs, the court was justified in directing a verdict in favor of the relator.
Judgment affirmed.